## JOHN F. JASINSKI v. CHRIST P. KELLER.[1]

October 22, 1943.

No. 33,586.

*T. A. Kingland,* for appellant.
*Moonan & Moonan,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from a judgment founded upon a verdict for his adversary.

The parties to this cause were rivals in the business of selling

[1]Reported in 11 N. W. (2d) 438.

milk and cream at retail at Owatonna. Plaintiff's business was known as "The Evergreen Dairy," defendant's as "The Butter Capitol Dairy." Over a period of years the parties have been negotiating for a sale to defendant of plaintiff's milk route. On July 14, 1941, these negotiations culminated in a sale, under the terms of which defendant paid plaintiff $85 in cash, $35 representing the value of plaintiff's bottles distributed among his customers on the route, and $50 for the route and good will of the business. In addition, defendant claimed that as part of the consideration for his purchase he was required to redeem an amount equal to but not exceeding $50 of plaintiff's unredeemed and outstanding milk tickets, later ascertained to be of the value of $211.88. Plaintiff, on the other hand, claimed that he sold the bottles and the route subject to the outstanding tickets and that there was no limit set. The real and determinative question in the case was which of these claims should prevail.

At the commencement of the trial counsel agreed that plaintiff's cause of action was not in dispute, *i. e.,* that he was entitled to recover $111.80 for milk sold to defendant after the sale of the route. Thus there was left for litigation only defendant's counterclaim. In this situation, his attorneys asked for the right to open and close the case. That right was accorded him, and the trial proceeded accordingly. The respective claims of the parties were fully gone into without objection.

In his counterclaim defendant alleged that plaintiff sold the bottles and route for $85; that in addition he (defendant) was "to give milk for $50 worth of milk tickets" theretofore sold by plaintiff; that he believed plaintiff's representations as to the amount of outstanding tickets "and relied thereon"; that "in truth and in fact, plaintiff had sold and there were outstanding over $200 worth of milk tickets" which "defendant was required to redeem," thus causing a loss to him in the amount of $150. This pleading was amended at the trial so as to allege that plaintiff's unredeemed tickets amounted to $211.88. Crediting plaintiff with $111.80, the amount of his claim, plus $50 worth of unredeemed

tickets which defendant conceded he agreed to, and later did, discharge, left a balance of $50.08 due defendant if his counterclaim was established. Plaintiff's reply admitted the sale of the route but otherwise denied defendant's counterclaim.

On the subject of plaintiff's representations, defendant testified that plaintiff (Settled Case, p. 17)—

"said there would not be over $50 worth of tickets out, and I said I don't like to take it that way. He said, you don't have to be afraid of me. I am giving you a square deal. When I say there ain't over $50 worth of tickets out, there ain't, and you don't have to be scared of me, because I would not put anything over on you no way." And again (Settled Case pp. 31-32): "Jasinski told me there would not be over $50 worth of tickets out. First he kept saying, there ain't much tickets out, and I said, would there be $50 worth, and he said, I don't think there would be quite $50 worth, not anymore. * * * They didn't have anything to show how many tickets was out, [so] I took his word for it."

As to the right of ticket holders to get what their tickets called for, plaintiff testified (Settled Case, p. 69): "Under the way I sold him with the understanding that he was to redeem them."

When both parties had rested plaintiff moved for an instructed verdict because defendant's answer "shows" that he "didn't elect to rescind the contract and agreement referred to in said answer, although obviously advised of the fraud of the allegations in said answer," but instead "proceeded to assert and go forward" with its performance, claiming and receiving the "benefits therefrom, when he had all the means of knowing all about the outstanding tickets he was to redeem under" its terms. Plaintiff further claims that the "answer fails to state any cause of action for counterclaim or set-off against" his claim.

In view of the manner in which the case had developed, counsel for defendant suggested that "in order to clarify the issues," the court might "permit an amendment of the answer to conform to the proof, setting forth such allegations" as the court might deem

18

"essential" to state a cause of action for fraud, but if the court thought otherwise defendant would "proceed upon the theory of breach of contract." The court thought the answer was sufficiently broad to constitute a defense of fraud. Plaintiff's appeal challenges this ruling as the basis for reversal.

■ "Pleadings are a part of the remedial or adjective law and compared with the substantive law are relatively unimportant. They are but means to an end, the end being the proper administration of the substantive law." Therefore, "forms of actions should not be allowed to cover a wrong, and logic should yield to justice. As the law is a practical science, having to do with the affairs of life, any rule is unwise if, in its general application, it will not, as a usual result, serve the purposes of justice." 5 Dunnell, Dig. & Supp. § 7498a, and cases cited in notes.

■ As we have seen, all the testimony came into the case without objection. In such circumstances it is evident that all issues in the case were tried by consent. It was therefore permissible for the court to allow an amendment of the pleadings to conform to the proof. *Id.* § 7713, and cases in notes.

■ Granting for the sake of argument that the court erred in submitting the case to the jury on the fraud issue, was plaintiff hurt or in any way prejudiced by such submission? Plaintiff obviously owed his former customers the amounts represented by the tickets he had sold them and for which he had been paid. If his business had not been sold he would have been required to redeem all these tickets himself. When he made his deal with defendant the ticket holders were not consulted. His obligation to them remained as it was. The parties to this action wisely concluded that the thing to do was for the buyer to take over the obligations existing between plaintiff and his customers. Naturally and properly, the question of the amount of outstanding tickets became a matter of importance. If, as the jury found, defendant was right in his claim that plaintiff represented to him that there was not to exceed $50 worth of tickets outstanding, then clearly a wrong was perpetrated upon defendant by plaintiff when,

instead of the $50 worth, he was required to redeem $211.88 worth of outstanding tickets. Defendant is only getting the amount actually due him, a sum that should have been paid without litigation. Upon no theory can it be said that plaintiff has been wronged or that defendant has unjustly gained anything to which he was not entitled. 1 Dunnell, Dig. & Supp. § 416, and cases in note 50.

Judgment affirmed.

MR. CHIEF JUSTICE HENRY M. GALLAGHER took no part in the consideration or decision of this case.

MR. JUSTICE LORING, absent because of accidental injuries, took no part in the consideration or decision of this case.